UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                                **DECISION AND ORDER**
          v.                                                05-CR-173-A

MAURICE FISHER,

                      Defendant.

---

       The defendant, Maurice Fisher, was charged in a Petition for Offender Under Supervision, filed on August 8, 2011 (the "Petition"), with three charges of violating a mandatory condition of his supervised release requiring that he "not commit another federal, state or local crime."  The Petition specifically charged that, on July 30, 2011, defendant Fisher:  (1) possessed a controlled substance with intent to sell it in violation of New York Penal Law § 220.16; (2) possessed 500 milligrams or more of cocaine in violation of New York Penal Law § 220.06; and, (3) possessed with intent to distribute cocaine base in violation of Title 21, United States Code, Section 841(a)(1).

       The charges in the Petition arise from a Buffalo Police Department seizure on July 30, 2011 of 22 plastic baggies of alleged crack cocaine from inside two magnetic key holders found attached to the frame under the driver's door of a rental vehicle that defendant Fisher was driving.  Based upon facts established

during a violation hearing, and for the reasons stated below, the Court finds that the defendant knowingly possessed cocaine with intent to distribute it and finds the defendant guilty of Charges 1, 2 and 3 of the Petition.

## BACKGROUND

A Judgment in a Criminal Case against defendant Fisher reflecting a January 24, 2008 sentencing was filed on February 6, 2008.  Doc. 195.  The defendant had been adjudged guilty after a plea to the offense of Conspiracy to Possess with Intent to Distribute and to Distribute Five (5) or More Grams of Cocaine Base in violation of 21 U.S.C. § 846.  Id.  For that offense, the defendant faced a mandatory-minimum sentence of 10 years imprisonment, but he was granted a downward departure under applicable Sentencing Guidelines and was sentenced to a term of imprisonment of 63 months to be followed by five years of supervised release.  His Criminal History Category at the time of the January 24, 2008 sentencing was Category VI.

Defendant Fisher's January 24, 2008 sentence included, as a Condition of Supervised Release, the following mandatory charge:

> The defendant shall not commit another federal, state or local crime.

Doc. 195, p. 3.  It was also a Special Condition of Supervision that the defendant was to:  "submit to a search of his person, property, vehicle, place of residence or

any other property under his control, based upon reasonable suspicion, and permit confiscation of any evidence or contraband discovered." Doc. 195, p. 4. The defendant's five-year term of supervised release began on September 30, 2009. Doc. 232.

After an initial appearance on a violation arrest warrant August 19, 2011, and several adjournments requested by defendant Fisher pending the disposition of related criminal charges in a local court, and to allow the defendant time to retain and to confer with new counsel, a violation hearing was held pursuant to Fed. R. Crim. P. 32.1(b)(2) on February 13th and 14th, 2012, that lasted approximately three and a half hours. The parties submitted memoranda of proposed findings and counsel made oral summations on March 28, 2012. The defendant has been detained pending the outcome of the revocation proceedings.

The Court evaluates the evidence offered to establish a violation of supervised release by a standard of the preponderance of the evidence. 18 U.S.C. § 3583(e)(3); Johnson v. United States, 529 U.S. 694, 700 (2000). While conducting the hearing and reviewing the evidence presented at the hearing, the Court is mindful that the Federal Rules of Evidence are not applicable in revocation proceedings. Fed. R. Evid. 1101(d)(3). Certainly, however, the Federal Rules of Evidence are a useful guide to help the Court to make findings supported by "verified facts" and by "accurate knowledge." United States v. Bari, 599 F.3d 176, 179 (2d Cir. 2010) (quoting Morrissey v. Brewer, 408 U.S.

471, 489 (1972).  During the approximately three and a half hour violation hearing on February 13th and 14th, 2012, the government introduced the testimony of Buffalo Police Officers Thomas F. Sercu, Jr., Donald Genovese, and David Acosta, Buffalo Police Lieutenant Michael March, and forensic chemist Kaitlin Drollette.  Defendant Fisher and his girlfriend, Danielle Stallings, testified on the defendant's behalf.  After carefully observing the witness' demeanor and testimony, and considering all of the exhibits admitted into evidence, and applying the preponderance of the evidence standard of proof, the Court finds the following facts.

## FACTS

On July 30, 2011, at approximately 4:23 p.m., Buffalo Police Officer Thomas F. Sercu, Jr., observed a black 2011 Jeep Grand Cherokee sport utility vehicle traveling north on Niagara Street in the City of Buffalo.  The driver was talking on a cellular telephone and made a left turn off Niagara Street without using a turn signal.

Officer Sercu quickly caught up to the Jeep, turned on the overhead emergency lights of his patrol car, and pulled the Jeep over near the end of a northbound entrance ramp to the I-190 highway.  Officer Sercu used a computer in his patrol car to check the license plate number of the Jeep and learned that it was a rental vehicle.  Officer Sercu approached the driver, saw that the driver

4

was alone in the Jeep, and that a cellular telephone was in the driver's lap.

During conversation with Officer Sercu, the defendant, Maurice Fisher, the driver of the Jeep, identified himself to Officer Sercu and handed his driver's license to the Officer.  Defendant Fisher told Officer Sercu that the Jeep was a rental vehicle and that it had been rented in his girlfriend's name.  The defendant told Officer Sercu that he was not named on the rental contract.  He told the Officer that he was talking to his girlfriend on the cellular telephone because she had been pulled over by New York State police on the I-290 in Cheektowaga, New York, for a old traffic ticket and that she needed the defendant's help to retrieve proof from her residence that the ticket had been resolved in order to prove that a suspension of her driver's license was supposed to have been lifted so that she would not be arrested.  Officer Sercu asked the defendant for a copy of the rental agreement for the Jeep, but the defendant was unable to provide a copy of the agreement.

Defendant Fisher and his girlfriend, Ms. Danielle Stallings, recalled that Officer Sercu spoke to Ms. Stallings on the defendant's cellular phone and that Ms. Stallings told Officer Sercu that the defendant was listed as an authorized driver of the Jeep on the rental agreement, despite the defendant's earlier statement that he was not  "on"  the contract.  The only rental agreement found in the Jeep was a prior customer's agreement.

Traffic on the I-190, near the end of the northbound on-ramp, was fast-

moving, so Officer Sercu called for another police car to help him safely conduct the traffic stop. While waiting for assistance, Officer Sercu checked defendant Fisher's driver's license on the computer in his patrol car and learned from a New York State Department of Motor Vehicle database that the defendant was on federal supervision. The defendant admitted to Officer Sercu he was on "federal probation." Because Officer Sercu could not confirm whether the defendant was authorized to be driving the rental Jeep, he decided to impound the vehicle.

      Buffalo Police Officer Donald Genovese arrived and parked behind Officer Sercu and the Jeep on the shoulder of the on-ramp to the I-190. Officer Sercu told Officer Genovese that he had concluded that he should impound the Jeep defendant Fisher had been driving because the defendant was an unauthorized operator and he asked Officer Genovese to conduct an inventory search in order to keep the contents of the vehicle safe pursuant to Buffalo Police protocol.

      Defendant Fisher was placed in the back of Officer Sercu's patrol car so that an inventory search could be conducted on the rental Jeep. While Officer Genovese searched the rental vehicle, Officer Sercu noticed that the defendant seemed to be nervous and seemed to be paying a lot of attention to what Officer Genovese was doing while searching in the Jeep. Based upon these observations, and upon the information that the defendant was on federal supervision for a narcotics-related conviction, Officer Sercu told Officer Genovese to search the vehicle thoroughly for drugs.

During Officer Genovese's search of the Jeep, he did not find the rental agreement, either, but he looked underneath the Jeep and spotted two items he recognized as rectangular magnetic key holders attached to the frame of the vehicle under the driver's side of the vehicle.  Based upon his years of experience, Officer Genovese immediately suspected that drugs were hidden in the magnetic key holders and he told Officer Sercu what he had found.

Officer Sercu told Officer Genovese to stop searching until a drug-detection dog could be brought in for assistance.  A short time later, Buffalo Police Officer David Acosta, a certified dog handler for the Buffalo Police Department, arrived with his drug-detection dog Konan.  Officer Acosta and Konan searched around the exterior of the Jeep defendant Fisher had been driving.  Konan indicated, with an "aggressive alert", to the presence of drugs in the area of the driver's side door where the magnetic key holders were attached to the frame under the Jeep. Konan pawed at and knocked one of the magnetic key holders to the ground where it opened and spilled out loose bags of what appeared to the Officers to be crack cocaine.

Officer Genovese put on rubber gloves and secured the two magnetic key holders and the plastic baggies of suspected crack cocaine.  Based upon his experience, including hundreds of arrests involving the distribution of crack cocaine in the past, as well as his training and experience with respect to crack cocaine, Officer Genovese testified that, in his opinion, the plastic baggies of

suspected crack cocaine were packaged for sale. Officer Genovese stated that his opinion was based partly upon the total amount of suspected crack cocaine, the amounts in the individual baggies, and the number of baggies. The estimated street value of the drugs in the magnetic key holders was approximately $10 per baggie, for a total over $2,000.

While defendant Fisher was still seated in the back of Officer Sercu's police car, Lieutenant Michael March arrived to help. Lieutenant March was told by Officers Sercu and Genovese that the vehicle had been stopped for a traffic violation and that they had found suspected drugs.

Lieutenant March warned defendant Fisher of his rights to silence and to an attorney by reading a Buffalo Police Department Miranda[1] warnings form to him. The defendant acknowledged that he understood the warnings. Lieutenant March asked the defendant who rented the Jeep. The defendant stated that he rented the Jeep. Lieutenant March asked the defendant whose drugs were in the Jeep. The defendant responded that he did not want to say whose drugs they were because he was on "federal probation." The defendant said that he would tell Lieutenant March whose drugs they were if Lieutenant March would promise the defendant a misdemeanor. Officer Genovese was present and heard these statements of the defendant to Lieutenant March. The statements were transcribed in a so-called 710.30 form later that evening.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Erie County Central Police Services Forensic Chemist Kaitlin Drollette obtained the 22 plastic baggies of suspected crack cocaine and the two magnetic key holders that had been submitted for forensic analysis by Officer Genovese. Chemist Drollette examined the items. After analyzing the solid rock-like substances in 19 of the 22 baggies, the Chemist determined that the substances contained cocaine, a controlled substance, and that the analyzed material weighed 3.91 grams. The chemical analysis did not address whether the cocaine was in base form. A certified copy of the Chemist's report of analysis was admitted into evidence during the hearing.

Defendant Fisher and his girlfriend, Ms. Stallings, testified during the hearing that they rented the Jeep on July 28, 2011, two days before the traffic stop, because the defendant's uncle had passed away and they needed the Jeep to drive out-of-town relatives who came to attend the funeral and to run errands and to help make arrangements related to the funeral. They rented the Jeep for a week, for approximately $400, and had turned in a 2010 Dodge Charger they had previously rented from the same rental company just before renting the Jeep because the Dodge Charger was not running well and they had been asked to turn it in. The rental agreement for the Jeep had a handwritten note saying it had not been cleaned before they accepted it.

While defendant Fisher and Ms. Stallings had the Jeep, it had been parked on the street at Ms. Stallings residence in a neighborhood that they characterized

as a high crime neighborhood. Ms. Stallings owned two other automobiles at the time she rented the Jeep. Defendant Fisher testified that he has enemies because he cooperated with the United States at the time he resolved his last federal criminal case.

## FINDINGS

Defendant Fisher does not dispute that 22 baggies of cocaine were in two magnetic key holders attached to the frame of the Jeep he was driving when he was pulled over by Officer Sercu. He denies that he knew that the cocaine was there. He also adamantly denies that he offered to tell Lieutenant March whose cocaine it was in return for the promise of a misdemeanor. However, after observing the testimony of all of the witnesses during the violation hearing, and carefully weighing the credibility of the witnesses, the Court finds that the defendant did knowingly possess the cocaine seized on July 30, 2011.

Defendant Fisher's denial that he tried to negotiate a misdemeanor disposition of potential drug charges with Lieutenant March was not credible. Officer Genovese was present and heard the defendant seek a misdemeanor. The Court was able to observe the defendant's denial while he was on the witness stand and finds it not credible.

Although defendant Fisher's counsel argues that the defendant's admissions that he knew about the cocaine when he was speaking to Lieutenant

March were so were contrary to his interests that they do not make sense, the Court disagrees.  The defendant has an extensive criminal record of arrests and convictions related to cocaine trafficking beginning when he was a teenager.  His supervised release had a search condition.  The defendant is very experienced in the criminal justice system and is more than intelligent enough to have recognized, after the search of the Jeep that he was driving by police officers and a dog was immediately followed by his being given Miranda warnings, that if he could assure himself a misdemeanor disposition of charges with the Buffalo Police Officers, he would likely serve a much shorter combined term of imprisonment than if he were to be prosecuted federally for possessing the cocaine with intent to sell it.

     Defendant Fisher took a calculated risk by making an implicit admission that he knowingly possessed the cocaine – he had to have knowledge the cocaine was under the Jeep if knew and could tell the police whose cocaine it was – that the Buffalo Police Officers might commit to a misdemeanor on the spot.  He calculated that a state misdemeanor sentence combined with a federal supervised release violation sentence would be a significantly shorter combined period of imprisonment than a sentence for another federal cocaine-base felony combined with a federal supervised release violation.  It made sense to the defendant at the time to run the risk of giving up a little with his admission to a misdemeanor to gain a lot by avoiding another federal drug felony.

Defendant Fisher's counsel elicited testimony from police officers that the cocaine could possibly have been left under the Jeep by a prior rental customer, or that it might have been placed there by an enemy of the defendant's, assuming it was not the defendant's in the first place.  The Court finds it implausible that someone would either lose more than $2,000 of cocaine in the two metal key holders under the Jeep the defendant was driving, or that someone would place it there with the intent to harm the defendant by incriminating him.  It would take less than $2,000 worth of cocaine to incriminate the defendant and planted cocaine would have led to a tip and would not have been found by happenstance after the defendant was observed talking on a cellular telephone while driving.  This was no set up.  The Court concludes that the defendant knew that he possessed the cocaine.

Based upon all the evidence at the hearing, the Court specifically finds by a preponderance of the evidence that defendant Fisher is guilty of Charge 1 of the Petition, possession of a controlled substance with intent to sell it in violation of New York Penal Law § 220.16.  Because the defendant knowingly and unlawfully possessed more than a half an ounce of cocaine, as established by the forensic analysis of the Erie County Central Police Services Chemist, he violated subdivision 12 of N.Y. Penal Law § 220.16, Criminal Possession of a Controlled Substance in the Third Degree, without further additional proof of intent to sell the cocaine.

The Court also finds defendant Fisher guilty of the lesser crime alleged in Charge 2 of the Petition, possession of 500 milligrams or more of cocaine in violation of New York Penal Law § 220.06.  His knowing and unlawful possession of much more than 500 milligrams of cocaine established his violation of subdivision 5 of N.Y. Penal Law § .220.16, Criminal Possession of Controlled Substance in the Fifth Degree.

Finally, the Court finds defendant Fisher guilty of a lesser-included federal offense of possession with intent to distribute cocaine in violation of Title 21, United States Code, Section 841(a)(1) as alleged in Charge 3.  The Court finds that the weight of the cocaine, likely more than four (4) grams of the rock-like substance if all 22 plastic baggies had been weighed during the forensic analysis, combined with the way the cocaine was broken up and packaged in individual $10-size baggies, supports the conclusion that the cocaine was to be distributed by the defendant.  Because it is likely not to affect his sentence for this violation, the Court does not reach the question whether the cocaine seized from the defendant on July 30, 2011 was cocaine base.

## CONCLUSION

For these reasons, the Court finds the defendant, Maurice Fisher, has violated the mandatory condition of his supervised release that he not commit another federal, state or local crime as is alleged in Charges 1, 2, and 3 of the

August 8, 2011 Petition for Offender Under Supervision.

Sentencing for the defendant's supervised release violations will be held on Tuesday, May 1, 2012 at 1:00 p.m.  The United States Probation Office shall complete a report by April 17, 2012.  Any sentencing memorandum to be filed on behalf of defendant Fisher shall be due April 23, 2012.  The response of the United States shall be due April 27, 2012.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 30, 2012